Filed:  February 12, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 95-1193
(CA-92-3550-N, CA-92-3551-N)
_____

Donald L. Pruitt, et al,

Plaintiffs - Appellants,

versus

Howard County Sheriff's Department, et al,

Defendants - Appellees.


_____

O R D E R
_____


        The Court amends its opinion filed January 31, 1996, as follows:

        On page 2, first full paragraph, line 6 -- the extra comma is deleted after the phrase "et seq."

        On page 4, first full paragraph, line 2 -- the word "judgement" is corrected to read "judgment."

For the Court - By Direction


/s/ Bert M. Montague
_____
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONALD L. PRUITT; DENNIS L.
PRUITT,
<u>Plaintiffs-Appellants,</u>

v.

HOWARD COUNTY SHERIFF'S
DEPARTMENT; MICHAEL A.
CHIUCHIOLO, Sheriff, Howard
County; HERBERT STONESIFER,
<u>Defendants-Appellees.</u>

No. 95-1193

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Edward S. Northrop, Senior District Judge.
(CA-92-3550-N, CA-92-3551-N)

Argued: September 29, 1995

Decided: January 31, 1996

Before ERVIN, Chief Judge, and MURNAGHAN and WILKINS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Benjamin Lipsitz, Baltimore, Maryland, for Appellants.
Mark Holdsworth Bowen, Assistant Attorney General, MARYLAND
STATE POLICE HEADQUARTERS, Pikesville, Maryland, for

Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, MARYLAND STATE POLICE HEADQUARTERS, Pikesville, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Donald L. Pruitt and Dennis L. Pruitt challenge the district court's dismissal of their discrimination suit against their former employer, the Howard County, Maryland, Sheriff's Department. The Pruitts allege that the Department discharged them from their supervisory positions because of their race and/or sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and of 42 U.S.C. §§ 1981 and 1983. Because the Pruitts have failed to submit evidence of discrimination creating a genuine issue of material fact, we affirm the district court's dismissal of the Pruitts' action.

I.

The Pruitts are white twin brothers who were employed by the Howard County, Maryland, Sheriff's Department from 1982 until their termination in 1991. At the time of their discharge, Donald Pruitt held the rank of major and served as Chief Deputy--second in command of the Department and supervisor of all aspects of its operations. Dennis Pruitt held the rank of sergeant, serving as departmental internal affairs officer and supervising the deputies assigned to road work.

In August 1990, during the administration of Defendant Sheriff Herbert Stonesifer, the Pruitts were charged with conduct unbecoming officers, failure to obey the order of a supervisor, and willful disobedience of an order. The charges were based on the Pruitts' alleged

2

"Nazi-like" conduct while on duty, including clicking heels, giving Nazi salutes, and uttering German expressions and commands, such as "Achtung," "Sieg" and "Heil." Apparently, the Pruitts' behavior was intended as a joke, imitating the television situation comedy "Hogan's Heroes," which parodied German officers guarding American POWs during World War II. The Pruitts continued this hilarity on a daily basis for a period of about ten years.

After an evidentiary proceeding, the Law Enforcement Officers Bill of Rights ("LEOBR") Hearing Board found both Pruitts guilty of one count of conduct unbecoming an officer, dismissed all other charges, and recommended that they each be demoted one grade in rank, fined $200, and required to attend sensitivity training. Defendant Michael A. Chiuchiolo, who replaced Stonesifer as Sheriff on December 3, 1990, rejected the board's recommendation and instead terminated both of the Pruitts effective February 6, 1991.

The Pruitts appealed Sheriff Chiuchiolo's decision to the Circuit Court for Anne Arundel County, Maryland, alleging violations of their First Amendment, equal protection and due process rights, and of their rights under the LEOBR. The circuit court resolved all issues in favor of the Department. The Pruitts then appealed to the Maryland Court of Special Appeals, which affirmed the circuit court's decision. Pruitt v. Howard County Sheriff's Department, 623 A.2d 696, 704 (Md. Ct. Spec. App. 1993).

On December 18, 1992, the Pruitts filed two (subsequently consolidated) complaints in the District of Maryland, alleging that they were discharged based on their race and/or their sex and seeking damages under Title VII and under 42 U.S.C. §§ 1981 and 1983. The suit named as defendants the Howard County Sheriff's Department, Sheriff Chiuchiolo, and former Sheriff Stonesifer (collectively "the Department"). The Pruitts did not deny their misconduct, but alleged that they were singled out for punishment because they are white men. In support of their claim, the Pruitts alleged that, while other Department members--including a black male deputy sheriff, a white female deputy sheriff, and "a number of" white male deputy sheriffs --engaged in the same behavior, the Pruitts were the only employees who were disciplined. No members of the Department other than the

3

Pruitts were investigated, charged, or punished in connection with the alleged misconduct.

The Department moved to dismiss the Pruitts' amended complaint and, in the alternative, for summary judgment. The district court dismissed the case under Fed. R. Civ. P. 12(b)(6), finding that the Pruitts had failed to state a prima facie case of racial or sex-based discrimination. Because most of those who purportedly engaged in the same misconduct and were not punished were of the same race and gender as plaintiffs, the court found that the Pruitts' own allegations refuted their discrimination claim. The Pruitts timely filed a joint notice of appeal on January 23, 1995.

II.

A plaintiff who alleges discriminatory discharge in violation of Title VII must prove that, but for his or her race or sex, the employer would not have taken the adverse employment action. Because the Pruitts offer no direct evidence of Howard County's intent to discriminate against them, they rely on circumstantial evidence under the three-step proof scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the familiar McDonnell Douglas paradigm, a plaintiff must first establish, by a preponderance of the evidence, a prima facie case of unlawful discrimination, which creates a rebuttable presumption. St. Mary's Honor Center v. Hicks, ___ U.S. ___, 125 L.Ed.2d 407, 415 (1993) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981)). Next, the defendant may rebut the presumption by articulating a legitimate, nondiscriminatory reason for its actions. Id. at 416. Once the defendant has offered a legitimate explanation, the presumption of discrimination drops away, and the plaintiff must prove that the employer's proffered reason is pretextual and the adverse employment action was actually taken because of race or sex. Id. Throughout the process, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine 450 U.S. at 253. Although the McDonnell Douglas structure was developed to assist trial judges in evaluating evidence produced at trial, we have applied this three-step proof scheme to summary judgment proceedings. See, e.g., Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993) (applying

4

<u>McDonnell Douglas</u> framework to an age discrimination claim at the summary judgment stage).

The district court found that the Pruitts failed to meet their initial burden of establishing a prima facie case of discrimination. In disparate treatment cases, a plaintiff may make out a prima facie case by proffering direct evidence of discrimination or indirect evidence "whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for the plaintiff's race [or sex]," the defendant would not have taken the adverse employment action. <u>Holmes v. Bevilacqua</u>, 794 F.2d 142, 146 (4th Cir. 1986). In the absence of such evidence--as is the case here--a plaintiff must resort to the <u>McDonnell Douglas</u> presumption framework "with all of its ensuing complexities." <u>Id.</u>

In <u>McDonnell Douglas</u>, a discriminatory hiring case, the Supreme Court held that in order to establish a prima facie case of discrimination, the plaintiff must show:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

411 U.S. at 802. The Court noted, however, that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." <u>Id.</u> at 802 n.13. Accordingly, courts have modified the <u>McDonnell Douglas</u> formulation to address a wide range of discrimination claims. <u>See</u>, <u>e.g.</u>, <u>Holmes</u> 794 F.2d at 146. In disparate discipline cases, the Fourth Circuit has held that in order to establish a prima facie case of discriminatory enforcement, a plaintiff must show

> (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees out-

5

side the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); see also Moore v. City of Charlotte, NC, 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985).

In granting the Department's motion under Rule 12(b)(6), the district court concluded that the face of the Pruitts' complaint did not state a prima facie claim of discrimination. Indeed, the district court found that the Pruitts' own allegations undercut any inference of discrimination because most of the employees who allegedly participated in the same misconduct and were not punished were also white men. Accordingly, the district court dismissed the case. We do not reach the question of whether this basis for decision was correct because we find that dismissal was clearly warranted on summary judgment grounds.

Summary judgment is proper only when the nonmoving party has placed no genuine issue of material fact before the court and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The court must assess the evidence and draw all permissible inferences in the nonmovant's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmovant must nevertheless make a sufficient evidentiary showing on each element of his claim such that a jury could reasonably find in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Rule 56 provides an important mechanism for avoiding a wasteful trial which would be of no use in disposing of the case. Id. at 327.

Under the McDonnell Douglas scheme, a defendant may rebut a prima facie case of discrimination by presenting a legitimate nondiscriminatory reason for its actions. Hicks, 125 L.Ed.2d at 416. In its motion to dismiss or for summary judgment, Howard County alleged that the Pruitts were discharged because they held high supervisory positions in the Department. By initiating the inappropriate behavior and refusing to obey orders to stop, the Pruitts' deportment condoned and fostered misconduct by their subordinates. No other deputy-- white, black, male or female--who supposedly participated in the

6

"Nazi-like" behavior occupied a position of authority in the Department. Because the Department articulated a legitimate, nondiscriminatory reason for its action, the burden shifted back to the Pruitts to respond to the motion for summary judgment by proffering evidence from which a reasonable jury could conclude both that the Department's explanation was pretextual and that the dismissal was actually motivated by the Pruitts' race or sex.

The Pruitts submitted no evidence at all to impugn the Department's explanation. They presented no evidence, for example, of prior remarks or actions by the Department suggesting either a general pattern of discrimination against white male employees or discriminatory intent toward the Pruitts in particular. Indeed, the Pruitts' own allegation that "a number of" white male deputies were not disciplined for the same misconduct supports the Department's contention that the Pruitts were treated more harshly not because of their race or sex, but because they occupied leadership positions. See Hughes v. Bedsole, 48 F.3d 1376, 1384-85 (4th Cir. 1995) (finding no genuine issue of material fact regarding whether employer's reasons were pretextual where female plaintiff's evidence that a male employee was not disciplined for comparable conduct was undercut by evidence that another female employee was also treated more leniently than plaintiff). In the absence of any allegation rebutting the Department's nondiscriminatory explanation, no reasonable trier of fact could conclude that discrimination was more likely than not a motivating factor in firing the Pruitts. The Pruitts cannot rely on conclusory allegations to create a factual dispute warranting a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Accordingly, entry of summary judgment for the Howard County Sheriff's Department is justified and the order of the district court dismissing the case is

AFFIRMED.

7