**Marlon SPRATLEY, Plaintiff,**

**v.**

**HAMPTON CITY FIRE DEPARTMENT and Gregory B. Cade, Individually and in His Capacity as Fire Chief for Hampton City Fire Department, Defendants.**

No. 4:95cv91.

United States District Court,
E.D. Virginia,
Newport News Division.

July 18, 1996.

## MEMORANDUM ORDER AND OPINION

CLARKE, District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons stated below, the Motion is **GRANTED.**

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Marlon Spratley, an African-American male, was employed by Defendant Hampton City Fire Department ("Fire Department" or "City") in December 1985. Spratley Aff. ¶ 1. During his employ, Plaintiff consistently received performance evaluations rated "very good," *see* Pl.'s Exh. 2, and had a perfect attendance record up until December 1993, *see* Pl.'s Exh. 3.

On May 16, 1993, Plaintiff, while driving a City fire truck to the scene of an apartment fire, was involved in an accident. Spratley Aff. ¶ 8. The accident was initially investigated by Acting Lieutenant Thomas E. Richardson. *See* Pl.'s Exh. 10–11. Richardson filed a Special Report accompanied by an Accident Investigation Report. *Id.* In his report, Richardson emphasized the citizen driver's inattention to the emergency vehicle. *Id.* However, although neither party has noted it, Richardson's actual words were that "[t]he citizen driver *contributed* to the accident," thus implying that Plaintiff also contributed to the accident. Pl.'s Exh. 11. In addition, Richardson also stated in his report that "[f]irefighters need to be cautious when responding, particularly when making *abnormal* traffic movements."[1] *Id.* This report was reviewed and signed by Battalion Chief A. Schmidt. *Id.*

Upon review of the accident report, Defendant Fire Chief Cade determined that plaintiff was at fault in the accident and issued a written reprimand, charging Plaintiff with violating Standard Operating Procedure (SOP) governing the operation of emergency fire vehicles. Compl. ¶ 10–12. Plaintiff challenged the reprimand through all stages of

Beverly D. Crawford, Sa'ad El–Amin, El–Amin & Crawford, P.C., Richmond, VA, for Plaintiff.

Cynthia A.E. Hudson, Kimberly S. Hugo, McGuire, Woods, Battle & Boothe, Richmond, VA, Albert P. Burton, Jr., Hampton, VA, for Defendants.

---

**1.** Apparently, Plaintiff had been attempting to make a U–Turn from the service lane of a roadway. Even though Plaintiff had his emergency lights on and his turn signal on, a car in the right lane hit the truck. Pl.'s Exh. 11.

the City's grievance procedures. Pl.'s Exh. 12–16. His grievance was denied at all stages. Pl.'s Exh. 12, 15, 17. The final decision, issued by a citizen panel that concurred with the City, was received by Plaintiff's attorney on December 1, 1993. Pl.'s Exh. 17.

During his next shift, Plaintiff called in sick. Pl.'s Dep. at 20–21. Plaintiff continued to call in sick for succeeding shifts. *Id.* Doctor W.A. Franklin, Jr. provided Plaintiff with a note for his disability from work from December 9, 1993 until December 17, 1993. Spratley Aff. ¶ 25. Dr. Franklin's initial diagnosis was Cephalgia (migraines). *Id.* ¶ 26.

On December 23, 1993, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination in his receipt of a written reprimand. Pl.'s Exh. 19. A copy of the charges was mailed to the City of Hampton on December 23, 1993. *Id.* The Defendants have not denied receipt of this EEOC charge.

Plaintiff continued to call in sick. Pl.'s Dep. at 20–22. At some point,[2] he submitted a doctor's note covering the period from December 2, 1993 to February 2, 1994. Spratley Aff. ¶ 35. This note diagnosed Plaintiff as having cluster headaches and situational depression. Pl.'s Exh. 22. Under these circumstances, Plaintiff had been authorized to use his sick leave and he was paid his full salary for the time off. Cade Aff. ¶ 5. Plaintiff has also claimed that his supervisor, Lieutenant Harvell, visited him regarding his absences and out of concern for him. Pl.'s Dep. at 54–56. As evidenced by Plaintiff's exhibits, Lieutenant Harvell expressed concern about Plaintiff's ability to ever return to work at the Fire Department. *See* Pl.'s Exh. 24.

Plaintiff did not return to work on February 2, 1994. Instead, he submitted another doctor's note stating that he was unable to return to work until March 2, 1994. Pl.'s Exh. 25. He requested continued sick leave for this period as well. *See* Pl.'s Dep. at 80. Because the City had a shortage of firefighters with Plaintiff's level of emergency medical certification, Chief Cade sought to determine more precisely Plaintiff's ability or inability to work. Cade Aff. ¶¶ 4–5. Consequently, Chief Cade sent Plaintiff a letter requesting further information from Plaintiff's doctor explaining in more detail Plaintiff's need to be granted another month's sick leave,[3] enclosing a City medical certification form for the Plaintiff's doctor to fill out.[4] Pl.'s Exh. 26. No information was provided by Plaintiff or his doctor.

Chief Cade sent Plaintiff another letter on February 10, 1994, directing Plaintiff to report to Dr. Timothy Raines for a fitness for duty examination which had been scheduled for him.[5] Pl.'s Exh. 27. Chief Cade noted that until the results were completed and evaluated, Plaintiff would be continued on sick leave. *Id.* Plaintiff failed to attend the fitness for duty examination. Spratley Aff. ¶ 67. Chief Cade then attempted to meet with Plaintiff to discuss the situation. Cade Aff. ¶ 7. Plaintiff refused to meet with Chief Cade and suggested that Chief Cade talk to Plaintiff's attorney. *Id.*

---

**2.** There is some dispute as to the exact dates that these doctor's notes were submitted to Chief Cade. This dispute, however, is not a material one.

**3.** The doctor's notes up until that time merely stated a brief diagnosis.

**4.** With respect to medical certificates, the City Personnel Policy Manual provides: "What constitutes acceptable evidence of illness, injury, or other incapacity of the employee himself/herself shall be determined by the department head.... When there is reason to believe that an employee is abusing sick leave privileges, a medical certificate may be required prior to approving sick leave of any duration." Cade Aff., Attachment 1.

**5.** The City Personnel Policy Manual provides that "[i]n cases where an employee's continued and/or periodic absences severely impact on productivity, the supervisor may arrange for a fitness for duty examination by a physician at the City's expense ... If, in the opinion of the examining physician, the employee is unable to perform his/her assigned duties, the employee may be reassigned or separated from employment. If the examining physician finds the employee able to perform his/her assigned duties, it is then the supervisor's responsibility to deny paid leave and/or leave without pay to such employees, and to take appropriate disciplinary action for excessive absenteeism." Cade Aff., Attachment 1.

As of March 1, Plaintiff had not complied with any of Chief Cade's requests. *Id.* Due to Plaintiff's "insubordinate" refusal to comply, Plaintiff's absence from work was considered unauthorized. *Id.* Chief Cade wrote to Plaintiff proposing to terminate his employment, effective March 16, 1994, because of (1) Plaintiff's insubordinate refusal to substantiate his need for sick leave and (2) his unauthorized absences from work. Pl.'s Exh. 29. On March 11, 1994, Plaintiff responded to this letter through his attorney. Def.'s Exh. C. His attorney stated that Plaintiff was not required to comply with Chief Cade's requests as they were not "reasonable." *Id.* His attorney also stated that she believed Plaintiff's absences to be proper under the procedures of the Fire Department. *Id.* She also indicated that discharging Plaintiff would appear retaliatory. *Id.*

On March 22, 1994, Chief Cade informed Plaintiff that because he still had not excused or explained his absences nor had he submitted any of the requested medical documentation, his termination would be effective March 31, 1994, and that he had the right to grieve. Cade Aff. ¶ 7–8. Plaintiff never grieved his termination. Instead, on April 20, 1994, he filed another EEOC charge alleging denial of sick leave and retaliatory firing.

On July 10, 1995, Plaintiff filed suit in this Court alleging (1) that the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in terminating Plaintiff's employment in retaliation for his filing of a discrimination charge with the EEOC; (2) that both the City and Chief Cade discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981 in terminating his employment; (3) that Chief Cade deprived Plaintiff of equal protection of the laws as guaranteed by the Constitution and enforced by 42 U.S.C. § 1983 by terminating his employment based on race; (4) that the City breached Plaintiff's employment contract; and (5) that the City and Chief Cade are liable for intentional infliction of emotional distress. Defendants filed their answer on August 31, 1995. Although the trial date had originally been set for April 17, 1996, because of the medical needs of Plaintiff's counsel the trial date was continued until August 7, 1996, and discovery cut-off dates were likewise changed. On June 20, 1996, Defendants filed a Motion for Summary Judgment.[6] Plaintiff responded to the motion on July 3, 1996. A hearing on the motion was held on July 10, 1996. The matter is now ready for adjudication.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). In order to survive summary judgment, a plaintiff must present "evidence on which a jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Presenting merely a "scintilla of evidence" is insufficient. *Id.* With this standard in mind, the Court addresses the merits of Plaintiff's claims.

### B. Racial Discrimination Claims

In order to establish a claim of employment discrimination under 42 U.S.C. § 1981 or an equal protection claim under 42 U.S.C. § 1983 on the basis of race, Plaintiff must meet the same proof scheme as required under Title VII.[7] *Persaud v. Morgan*

---

6. Under Local Rule 10(F)(1), a summary judgment motion must be filed and set for hearing "within a reasonable time before the date of the trial." Eastern District of Virginia, Norfolk Division, Local Rule 10(F)(1). As Defendants' counsel pointed out at the hearing, Plaintiff had never argued that the motion was untimely, nor had the Court raised this issue. The Court finds that the motion was filed within a reasonable time before the trial, especially in light of the continuance granted because of Plaintiff's counsel and the altered discovery dates. Accordingly, the motion is held to have been timely filed.

7. Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment,

*State Univ.,* 34 F.3d 1066, 1994 WL 446797 (4th Cir. Aug. 19, 1994) (unpublished) (citing *Abasiekong v. City of Shelby,* 744 F.2d 1055, 1058 (4th Cir.1984)); *see also Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989) (applying Title VII proof scheme applicable to § 1981 claims); *Holder v. City of Raleigh,* 867 F.2d 823 (4th Cir.1989) (applying Title VII analysis to § 1983 claims). As both parties concede, in order to establish a prima facie case of discrimination in the discharge of employees, a plaintiff must show: (1) that he belongs to a racial minority; (2) that he was engaged in conduct comparable to employees outside the protected group; and (3) that the adverse employment action against plaintiff (termination) was not taken with regard to similarly situated employees outside the protected class. *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993); *Alvarado v. Board of Trustees of Montgomery Community College,* 928 F.2d 118, 121–22 (4th Cir.1991). Establishment of his prima facie case will create a presumption that plaintiff's employer unlawfully discriminated against him. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

▮ If the plaintiff succeeds in proving a prima facie case by a preponderance of the evidence, the burden shifts to the defendant to produce evidence that shows some "legitimate, nondiscriminatory reason for the employee's" termination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

If the defendant meets this burden of production, then the presumption is effectively rebutted and drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95. At this point, the plaintiff has the burden of demonstrating that the proffered reason was not the true reason for his termination, but rather that race was. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff thus has the "ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Bur-*

because of such individual's race...." 42

*dine,* 450 U.S. at 256, 101 S.Ct. at 1095; *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749. He can show this by persuading the court that a discriminatory reason motivated the employer or by showing that the proffered explanation is pretextual. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989). The Fourth Circuit has held this burden-shifting scheme to be applicable to summary judgment rulings. *See, e.g., Mitchell v. Data General Corp.,* 12 F.3d 1310, 1315–16 (4th Cir.1993).

▮ In this case, because Plaintiff has failed to establish that the adverse employment action against him (termination) was not taken with regard to similarly situated employees outside the protected class, he has failed to satisfy the third prong of his prima facie case of discrimination. In order to show that he is "similarly situated," Plaintiff must show that his actions and the actions of his white colleagues were of "comparable seriousness." *Cook,* 988 F.2d at 511; *Moore v. City of Charlotte,* 754 F.2d 1100, 1107 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985) (quoting *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976)). "This determination should be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender. While this is a question of fact, summary judgment is, of course, appropriate where no rational trier of fact could find for the non-moving party." *Binford v. RJR Nabisco Brands, Inc.,* 1994 WL 870111, at *4 (E.D.Va. Nov. 17, 1994) (Spencer, J.) (citations omitted). The Fourth Circuit has also noted the difficulties in making these determinations due to the "reality that the comparison will never involve precisely the same set of work-related offenses ... under the same sets of circumstances." *Cook,* 988 F.2d at 511.

Plaintiff was discharged because of his long-term absence from work and his failure to provide some detailed evidence of his medical condition supporting his need for the extended absence as requested on multiple

U.S.C. § 2000e–2(a)(1) (1994).

occasions by his employer. In addition, Plaintiff was asked to be evaluated by a physician as to his "fitness for duty," Spratley Aff. ¶¶ 61–62, because there was some indication that he would never be able to function at work again, *see id.* ¶ 53; Pl.'s Exh. 24. Plaintiff did not attend this evaluation, thus failing to establish that he was fit for duty. Spratley Aff. ¶ 67. Plaintiff was ultimately discharged for insubordination and the resulting absence from work without authorization. Cade Aff. ¶ 8.

The Court finds entirely unpersuasive Plaintiff's claims that white employees whose actions were comparable or worse than his were treated better. Plaintiff compares himself to Firefighter Cappendyck and Captains Hensley and Garris. Although none of these employees were found to be guilty of the same misconduct for which Plaintiff was discharged, their actions are the most comparable.[8] Cappendyck received a two-day suspension for failure to comply with a department SOP concerning human relations, insubordination, and careless use of city property.[9] Pl.'s Exh. 35. Cappendyck's discipline was based on a one-time incident. Captain Garris was reprimanded for his improper behavior and failure to comply with an instruction established by the Department Head. *Id.* Finally, Plaintiff also compares himself to Captain Hensley who he claims was "suspended and demoted" for his failure to obey "a direct order from Cade not [to] take his girlfriend to a training class and to limit his on-duty contact with Medic/Firefighter Patrick." Mem. in Resp. to Def.'s Mot. for Summ.J. at 13–14. Plaintiff fails to note, however, that Defendant Chief Cade did in fact dismiss Hensley for his conduct; the grievance committee reduced the penalty

to the two-day suspension that he ultimately received.[10] Thus, Defendant Fire Chief Cade treated this white employee, who Plaintiff claims to be similarly situated to himself, exactly the same. Furthermore, the other employees' misconduct, although by no means admirable, did not affect the functioning of the fire department as Plaintiff's failure to work for three months did.[11] *See Binford,* 1994 WL 870111 at *4.

The facts that Plaintiff presents do not support his claim of prima facie discrimination. The white employees most similarly situated to Plaintiff were subject to a range of disciplinary actions, from reprimands to dismissals. These disciplinary actions include the same action that was taken against Plaintiff. *See Cook,* 988 F.2d at 511–12. Thus, Plaintiff has not established that the disciplinary measures enforced against him by Chief Cade or the Hampton Fire Department were more severe than those enforced against the other employees. The Court accordingly finds that Plaintiff has failed to establish a prima facie case of racial discrimination.

Moreover, even assuming Plaintiff had established a prima facie case, he still would fail under the summary judgment standard because the evidence clearly indicates that the reason for Plaintiff's discharge was due to his failure to come to work for two months, his failure to present sufficient medical evidence of his inability to work, his failure to attend a fitness for duty examination, and his refusal to meet with Cade. His employer attempted on numerous occasions to give Plaintiff an opportunity to establish that his medical condition was serious, but

---

8. Plaintiff also relies on the fact that white firefighters who committed more serious offenses were also dismissed. Dismissals for misconduct more serious than Plaintiff's does not strengthen Plaintiff's argument.

9. Cappendyck became irate when questioned about his failure to properly put away some fire station equipment and began screaming and shouting obscenities. Chief Cade originally proposed to suspend him for five days, but after Cappendyck met with Chief Cade and discussed the incident, the penalty was reduced to a two-day suspension. The Court notes that, unlike Cappendyck, Plaintiff never met with Chief Cade

following his notice of proposed disciplinary action.

10. The Court notes that Spratley, unlike Cappendyck, did not grieve his dismissal. It is possible that if he had done so, his dismissal may have been reduced by the grievance panel as well.

11. Because of plaintiff's absences, the Fire Department was forced to find numerous substitutes, which is apparently more difficult in this case because Plaintiff was a medic-firefighter. Cade Aff. ¶ 4.

Plaintiff failed to do so. There is no other inference that can reasonably be drawn from the undisputed facts in the case. Furthermore, there is no factual evidence in the record that Defendant Fire Department or Defendant Fire Chief Cade were motivated by race, which Plaintiff must demonstrate in order to meet his burden. *See St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749. Plaintiff's "substantial record of misconduct lies in stark contrast to [his nonexistent] evidence of discrimination." *Williams,* 871 F.2d at 456. Without factual evidence rebutting Defendants' nondiscriminatory reasons, no reasonable trier of fact could conclude that discrimination was more likely than not a motivating factor in firing Plaintiff. Accordingly, the Court GRANTS Defendants summary judgment on Plaintiff's racial discrimination claims under 42 U.S.C. §§ 1981 [12] and 1983.

### C. Retaliatory Discharge Claim

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an employee because he has made an EEOC charge against the employer. 42 U.S.C. § 2000e–3(a) (1994). In order to prevail on his retaliatory discharge claim under Title VII against the City, Plaintiff must "follow the same sequence of proof that [he] was required to follow in [his] discrimination claim." *Id.* at 457 (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985)). The test for proving a prima facie claim of retaliatory discharge, however, requires Plaintiff to show that: (1) he was engaged in protected activities, such as filing an EEOC complaint; (2) his employer took adverse action against him; and (3) a causal connection existed between the filing of the EEOC complaint and the adverse action. *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994); *Williams,* 871 F.2d at 457. If Plaintiff establishes a prima facie case, Defendant may rebut it by legitimate nonretaliatory reasons. *Williams,* 871 F.2d at 457. Once

again, if the prima facie case is successfully rebutted, Plaintiff bears the burden of proving that Defendant proffered reasons are pretextual. *Id.*

In this case, the Court finds that Plaintiff has established a prima facie case. It is undisputed that Plaintiff filed an EEOC claim and that he was fired soon thereafter. "While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Id.* However, Plaintiff has failed to show that Defendant's proffered legitimate reasons for discharging Plaintiff are pretextual.

As discussed earlier, both Defendants have proven legitimate nondiscriminatory reasons for discharging Plaintiff. Spratley's only evidence of retaliation is the fact that Defendants knew of his EEOC filing at the time he was fired. " 'Mere knowledge on the part of an employer that an employee ... has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against the employee." *Carter,* 33 F.3d at 460 (quoting *Williams,* 871 F.2d at 457). Plaintiff has not offered any evidence that Defendants reasons for discharging him were pretextual. Unsupported allegations of an employer's motives does not confer immunity from summary judgment. *Ross,* 759 F.2d at 366. "In the absence of any factual evidence rebutting [Defendants'] nondiscriminatory explanations, no reasonable trier of fact could conclude that discrimination was more likely than not a motivating factor in firing" Plaintiff. *Pruitt v. Howard County Sheriff's Department,* 76 F.3d 374, 1996 WL 37031, at \*4 (4th Cir. Jan. 31, 1996) (unpublished), *cert. denied,* —— U.S. ——, 116 S.Ct. 1879, 135 L.Ed.2d 175 (1996). Thus, Plaintiff has failed to meet his burden of proof on his retaliatory discharge claim. Accordingly, the

---

**12.** Furthermore, the Fourth Circuit has explained that the federal remedy for § 1981 claims is found within § 1983. *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995). Claims against state entities pursuant to § 1983 require a plaintiff to show an official custom or policy of the alleged unlawful activity. *Id.*

Plaintiff has not alleged nor presented any evidence indicating that the Hampton City Fire Department has a policy of discrimination or retaliation in its firing of employees. Thus, any claims against the Fire Department under either § 1981 or § 1983 would have to be dismissed for this reason as well.

Court GRANTS Defendant City's summary judgment motion on this claim.

### D. Pendent State Law Claims

Because Defendant has been granted summary judgment on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) (1994). Consequently, the Court DISMISSES these state law claims.

### III. CONCLUSION

For the above-mentioned reasons, Defendants' Motion for Summary Judgment is **GRANTED** on all of Plaintiff's claims under Title VII and 42 U.S.C. §§ 1981 and 1983. The remaining state law claims are **DISMISSED** without prejudice.

IT IS SO **ORDERED.**